LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue
Wantagh, NY 11793
(516) 826-6500
Gary F. Herbst (GFH#2498)
Salvatore LaMonica (sl#2148)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
AT BROOKLYN

---------------------------------------------------------x

In re:                                                    Chapter 7
                                                          Case No: 105-22763-DEM

ANDEL JEWELRY LLC,

        Debtor.

---------------------------------------------------------x

## APPLICATION APPROVING EMPLOYMENT OF
## LAMONICA HERBST & MANISCALCO, LLP
## AS ATTORNEYS FOR THE TRUSTEE

      The Application of Richard E. O'Connell, Esq. the interim Chapter 7 trustee of the estate of Andel Jewelry LLC (the "Debtor") respectfully sets forth and states:

      1.    I am the Interim Chapter 7 trustee of the above-captioned Debtor, having been appointed on September 8, 2005. This case was filed as an involuntary Chapter 7 case on August 10, 2005, and an order for relief was entered on September 6, 2005. By this Application, I seek authorization to retain, as my attorneys, the law firm of LaMonica Herbst & Maniscalco, LLP., 3305 Jerusalem Avenue, Wantagh, NY 11793 ("LHM"), *nunc pro tunc* as of September 9, 2005. LHM has substantial experience in acting as Trustee's counsel in cases under the Bankruptcy Code. As set forth in the companion affidavit of Gary F. Herbst, Esq., a member of LHM, LHM is disinterested, as that term is defined in 11 U.S.C. §101(14), and consistent with 11 U.S.C. §327(a), LaMonica Herbst & Maniscalco, LLP does not hold or represent any interests that are adverse to this Estate.

2. Although it is by no means certain at this point in the case that the estate has unencumbered assets that will be available to pay a dividend to unsecured creditors, it is nonetheless necessary that I retain counsel in this case in order to assist me in performing the duties set forth in 11 U.S.C. §704. The Debtor in this case has neither appeared nor filed schedules in this case, and thus the case record discloses nothing about the debtor and its estate.

3. On September 9, 2005, the day after my appointment as interim trustee, I went to the Debtor's premises at 31-00 47th Avenue, Long Island City, New York, with Salvatore LaMonica, Esq., of the LHM firm, and David R. Maltz, principal of the auction firm of David R. Maltz & Co. Inc. Upon our arrival, we dscovered that the debtor, formerly a large jewelry manufacturer which had employed 400 persons at its Long Island City facility, had been engaged for approximately three months in a voluntary liquidation of its assets and application of the proceeds thereof to the secured debt of Sovereign Bank, a creditor that asserts a lien on all of the Debtor's assets, securing a claim in the pre-liquidation amount of approximately $18,000,000, with a current balance of approximately $6,200,000. On September 8, we spent approximately three hours at the Debtor's facility, and met with Daniel Cecil, the Debtor's chief operating officer, who has been overseeing the Debtor's liquidation. We also spoke by telephone on that day with Edward Bertozzi, Esq., of the Providence, R.I. firm of Edwards & Angell, which represents Sovereign Bank. On September 12, 2005, Mr. LaMonica and I spent a further three hours at the premises, where we met with Mr. Bertozzi, as well as Al Brown and Elizabeth Sousa of Sovereign Bank, all of whom had come from Providence for the meeting, and with two representatives of ABN-AMBRO, Sovereign's participating co-lender. During the course of that meeting, Mr. Bertozzi and his clients, and the representatives of

ABN-AMBRO, explained to us their views as to how the debtor's assets should be liquidated in order to yield the highest practicable value for creditors, taking into account the expenses of that liquidation.

4. I have reached certain preliminary conclusions regarding the Debtor and its estate, and regarding the course of administration, at least in the short term. It appears that the debtor's staff has been reduced to approximately 20 employees, who are primarily engaged in the task of receiving so-called memo inventory that is being returned on a daily basis from the debtor's consignee customers. According to Records of the debtor exhibited to us, memo inventory that is currently outstanding and subject to return to the debtor has an estimated liquidation value of approximately $1.7 million. After receiving the memo inventory, the Debtor's employees have been engaged in identifying the returned items, repairing any damaged items, and returning the items to the Debtor's regular in-house inventory. Records of the Debtor exhibited to us reflect that in-house inventory has an estimated value of approximately $1.9 million. In addition to the Debtor's inventory, the Debtor's records indicated accounts receivable with an estimated collectable value of approximately more than $1 million. Mr. Cecil also described to us a claim of the Debtor, currently in litigation, against a former officer, John Teraccian, who allegedly misappropriated proprietary information of the debtor, including customer lists, when he left the debtor early in 2005. It would be premature to determine whether that claim has any substantial value to the estate.

5. As noted above, the debtor has not filed schedules, although we have discussed with Mr. Cecil the debtor's obligation to do so, and are advised that the debtor will shortly retain counsel. We have not yet, moreover, had an opportunity to examine Sovereign's loan documents and public filing, in order to determine whether it has a valid, perfected and enforceable security interest, and whether it may be subject to any avoidance claims by the

trustee. It is therefore impossible, at this point, to determine whether Sovereign's claim is in fact secured in whole or in part, and whether the liquidation value of the debtor's assets is sufficient to pay in full whatever claim Sovereign may have. In addition, we have been advised by Mr. Cecil and by Mr. Bertozzi that a junior lien is claimed by Straub Investments, an apparent insider that injected approximately $5,000,000, allegedly as subordinated debt, approximately five years ago. We have had no opportunity to examine that security, nor to arrive at any conclusions as to its validity nor as to whether it may be subject to avoidance or subordination. Because the debtor's facilities remain open, and because it appears necessary for the benefit of all parties that the debtor continue to receive back into inventory the so-called memo items, we drafted and entered into a letter agreement with Sovereign on September 9 whereby Sovereign committed to indemnify me and the bankruptcy estate, to the full extend of its collateral, for any liability that might arise out of such liquidation-related operations as are currently, and necessarily continuing at the debtor's facility in order to maximize the value of the Debtor's inventory.

6. Notwithstanding the tentative nature of my information at this point, I have nonetheless concluded that it is necessary for the benefit of all parties that the debtor's inventory be liquidated as quickly as possible in a manner that will yield the highest possible return, taking into account the fact that the debtor has been incurring substantial costs for rent and salaries during the course of ongoing liquidation. We are therefore seeking to negotiate with Sovereign an agreement whereby Sovereign will agree to finance, out of its collateral, the liquidation expenses of the trustee, with the actual disposition of the proceeds to await further determination as to who is entitled to those proceeds. At the suggestion of Douglas Pick, Esq., attorney for the petitioning creditors, Mr. LaMonica has spoken to Donald A. Palmieri, a well-known gemologist and president of Gemological Appraisal Association, Inc., who has

assisted parties, including bankruptcy estates, in the liquidation of jewelry inventories. It is our intention to request from Mr. Palmieri a proposal for liquidation of the debtor's assets. In addition, we have asked David R. Maltz, the auctioneer who accompanied Mr. LaMonica and me to the debtor's premises on September 9, to make a proposal as to liquidation by means of a public auction. Further, we are seeking to obtain a bid from Straub Investments, to purchase the debtor's assets, subject to higher and better offers.

7. As noted repeatedly above, I am aware that all of our efforts may conceivably yield no return for unsecured creditors, if, for example, it is ultimately determined that all of the debtor's assets are subject to the lien of Sovereign and/or a subordinate lienor. Nonetheless, at this point, given the possibility that the estate may have possible defenses to secured claims and/or that liquidation of the debtor's assets may yield sufficient funds to yield an equity for unsecured creditors, I have no choice but to administer the debtor's assets, and in order to do so I am now seeking to retain LHM as my attorneys. Because Mr. LaMonica has already expended substantial time in providing services to me in this matter, I further seek to have the retention of LHM approved *nunc pro tunc* as of September 9, 2005.

8. To the best of the Trustee's knowledge, LH&M has no connection with the Debtor's creditors or any other party in interest or their respective attorneys, except as set forth in the attached affidavit of Gary F. Herbst, Esq. (the "Affidavit") a member of LH&M. Additionally, LH&M represents no interest adverse to the Debtor or the estate, or any other interested person in the matters with respect to which LH&M is being retained by the Trustee, except as set forth in the attached Affidavit.

9. Furthermore, LH&M is a "disinterested person" as that term is defined in Section 101(14) of the Code in that said firm:

    (a) is not a creditor, equity security holder or insider of the Debtor;

(b) is not and was not an investment banker for any outstanding security of the Debtor;

(c) has not been, within three (3) years prior to the Filing Date, (i) an investment banker for a security of the Debtor or (ii) an attorney for such an investment banker in connection with the offer, sale, issuance of a security of the Debtor;

(d) is not and was not, within two (2) years prior to the Filing Date, a director, officer or employee of the Debtor or of an investment banker specified in subparagraph (b) or (c) of this paragraph;

(e) does not have an interest materially adverse to the interest of the estate or of any class of creditor or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker specified in subparagraph (b) or (c) of this paragraph, or for any other reason.

10. Based on the foregoing, the Trustee submits that the retention of LH&M is not only necessary but also in the best interest of this estate.

11. No prior application for relief sought herein has been previously made to this or any other court.

**WHEREFORE**, the Trustee respectfully requests the entry of the order authorizing the retention of LaMonica Herbst & Maniscalco, LLP, as attorneys for the Trustee.

Dated: Whitestone, New York
September 19, 2005

**RICHARD E. O'CONNELL, ESQ.**
Chapter 7 Trustee of the Estate of
Andel Jewelry LLC

By: */s/ Richard E. O'Connell*
Richard E. O'Connell, Esq. (ROC#7157)

LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue
Wantagh, NY 11793
(516) 826-6500
Gary F. Herbst (GFH#2498)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
AT BROOKLYN

---------------------------------------------------------x

In re:                                    Chapter 7
                                          Case No: 105-22763-DEM

ANDEL JEWELRY LLC,

       Debtor.

---------------------------------------------------------x

## AFFIDAVIT IN SUPPORT OF APPLICATION APPROVING EMPLOYMENT OF LAMONICA HERBST & MANISCALCO, LLP AS ATTORNEYS FOR THE TRUSTEE

STATE OF NEW YORK   )
                                 ) SS.:
COUNTY OF NASSAU    )

       Gary F. Herbst, Esq., being duly sworn, deposes and says:

       1.     I am a member of the firm of LaMonica Herbst & Maniscalco, LLP ("LH&M"), with offices located at 3305 Jerusalem Avenue, Wantagh, New York 11793. I have been duly admitted to practice law before this Court and the courts of the State of New York.

       2.     LH&M does not represent any creditors or any other party in interest or their respective attorneys in any matter adverse to the Debtor, the Trustee or the Estate.

       3.     Moreover, neither LH&M nor I represent or hold any interest adverse to the Debtor, the Trustee or the Estate in the matters upon which LH&M is to be engaged.

       4.     LH&M is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, in that the firm:

              a.     Is not a creditor, equity security holder or insider of the Debtor;

              b.     Is not and was not an investment banker for any outstanding security of the Debtor;

  c. Has not been, within three years before the date of the filing of the Debtor's Chapter 7 petition: (i) an investment banker for a security of the Debtor; or (ii) an attorney for such an investment banker in connection with the offer, sale or issuance of a security of the Debtor; and

  d. Is not and was not, within two years before the date of the filing of the Debtor's Chapter 7 petition, a director, officer, or employee of the Debtor or of an investment banker specified in subparagraph (b) or (c) of this paragraph.

5. The hourly rates for the attorneys, legal assistants and paraprofessionals of LH&M range from Seventy-Five ($75.00) Dollars to Three Hundred Sixty ($360.00) Dollars per hour.

                */s/ Gary F. Herbst*
                GARY F. HERBST, ESQ. (GFH#2498)

Sworn to before me this
19 day of September 2005

*Joyce Glass*
Notary Public

*Andel Jewelry LLC/LH&M Retention App&Aff.wpd*